The case for argument is Umana v. Garland and Ms. Sloan, if you can just hold on for a moment while we... I'm afraid you're... you are losing your audience. Alright, whenever you're ready. Good morning and may it please the court. I'm Sarah Sloan for Petitioner Luis Umana and I've reserved three minutes of my time for rebuttal. In denying Mr. Umana special rule cancellation of removal, the BIA exceeded its authority in two fundamental ways. I'm sorry, can you bring your mic a little bit closer to you? I'm having a hard time hearing you. Sure. First, the BIA failed to apply the standard for reviewing criminal complaints, which provides that the agency can consider criminal complaints but cannot give substantial weight to them absent a conviction or corroborating evidence of the allegations therein. The BIA failed to apply that standard in name or in substance. And second, the BIA engaged in fact-finding in direct contravention of a regulation that by treating the allegations in those criminal complaints as proven facts when the IJ had not done so. So can I ask, Counselor, if the IJ found a pattern of anger and violence, how is it that they were able to do it without actually finding some fact? And then if the IJ found that, then how was the BIA over doing its own fact-finding? So the immigration judge did state that there was a pattern of violence, but it based that conclusion solely on the allegations in the criminal complaints. And you can see that at AR-72, where the only thing that the immigration judge cites in support of the pattern. I completely hear that. And I understand that you are arguing about the substantial weight. I'm just trying to kind of get some of the nuance because this is a hard issue we're trying to deal with. I'm asking how the IJ could have found a pattern of anger and violence without engaging in fact-finding on the fact that there was a pattern of anger and violence. Well, all that the immigration judge is doing is looking at those criminal complaints and looking at the arrests and then saying, based on those arrests and based on those  But there is no indication from the immigration judge's decision that it is finding that Ms. Romano actually engaged in that conduct. And we know that because the immigration judge repeatedly uses phrases. But if it was a pattern, how did they not find it? Right. I mean, I think there's a you're making an argument about whether or not they relied too much on it or whether or not they should have over relied. But I hear the argument you just started off with is that there was improper fact-finding by the BIA. And if the IJ found a pattern of anger and violence, didn't they do some finding, which then the BIA can adopt or not adopt or without actually engaging in proper improper fact-finding? So I respectfully disagree, Your Honor, that stating that the allegations and the finding that Mr. Romano engaged in that conduct and the immigration judge is very careful to qualify its description of the allegations in the criminal complaint by using phrases like allegedly punched, allegedly struck, allegedly chased and never finds that never uses sort of definitive phrasing that the BIA uses to describe those allegations. Except for the words pattern, right? Like, I was with your argument for a long time until the pattern of anger and violence. And so doesn't that imply that there's some fact-finding in that, at least imply it? I mean, are you asking us to create a rule that there needs to be that it needs to be more explosive than that? Well, I don't think that's asking the court to to create a rule, Your Honor. I think that the immigration judge did not make a finding. It did note this this pattern. The immigration judge says, said, I do believe that these two arrests show a pattern. So therefore, that is a finding. That is, it isn't I allegedly believe or I might believe that it's I believe that. It's not a finding, though, that Mr. Romano engaged in that conduct. It's stating that there were arrests for for certain conduct. And I'm concerned about these arrests and what those arrests show. And the I.J. also found, I mean, he testified that he was not. Candid, not fully candid about about his his account of of those incidents. So the immigration judge never made an explicit adverse credibility finding. If on A.R. 68 to 69, the immigration judge does express some concerns about whether Mr. Romano was fully candid, which he never renders an explicit adverse credibility finding. And in the recent Supreme Court case of Ming Dai that the government cites, the Supreme Court reaffirmed that under the INA, the applicant is entitled to a presumption of credibility on appeal to the BIA, absent an explicit adverse credibility finding. And there is not an explicit adverse credibility finding here. Finding that somebody wasn't candid is not an is not an endorsement. Well, there there wasn't a finding that Mr. This is discretionary on the part of the BIA, right? Yes, this is discretionary. Correct. The relief is discretionary. That's right. And your your client. We entered illegally, I think, three times. That's right. So, I mean, why? What what heart rending claim on discretion can your client make? Well, to to us or to the BIA? Well, so so two things there, Your Honor. First of all, even though this was a discretionary determination, the BIA engaged in errors of law in reviewing the immigration judge's decision. And the the the BIA is bound by its regulations, which prohibits it from engaging in fact finding and is bound by its precedent, which prohibits it from placing substantial weight on criminal complaints absent corroborating evidence. Now, in addition to that, I do want to note that the immigration judge specifically noted, and this is a quote, that there were many positive factors. Can I just in the record? I'm sorry if I could just jump in and stop you on the point you were making regarding the standards, the BIA standards of when it's appropriate to rely on allegations, non convictions that are not corroborated and that are contested. And so assuming accepting the idea that that the I.J. was making findings as his conduct. What is your argument as to why this would be either not appropriate or not inconsistent with the the arguing decision? Could you speak to that? Yes. So the the even if the court believes that the I.J. was making a finding about the facts here, about whether Mr. in that conduct that does not relieve the agency from its obligation to apply the already in standard. And what that standard says is that where there is a criminal complaint that did not result in the conviction and that is not supported by corroborating evidence, the agency cannot place substantial weight on that. And the agency here, there's simply no indication that the agency applied that standard here. The agency didn't cite, discuss, acknowledge that standard. The agency, in fact, all indications are that it placed substantial weight on the allegations in the criminal complaints. It spends significant amount of time discussing and detailing those allegations. And further, the the agency never states explicitly or implies that there is any evidence that corroborates the allegations in the criminal complaints. Again, if you look at A.R. 72, the immigration judge bases its conclusion that there's this pattern of violence solely on the allegations in the criminal complaints and doesn't cite any other. Is it the case that the I.J. heard testimony from your client and concluded that he was less than candid in describing these events, these allegations? So the immigration judge never rendered an adverse credibility. I understand that. I have a different question. Please answer my question. So even if the the immigration judge doubted. Yes, your client testified. Yes, your client testified about these incidents. Yes, the I.J. concluded that he was less than candid about them. The I.J. did express concerns and our client did testify that that's right. And but I do want to note that in the Garcia Rogel case, that was the subject of our 28 J letter there. The the court, the Fourth Circuit stated that the immigration judge there very well may have determined that the police report was more credible than the petitioner's testimony, but still under the Aragin standard could not place a substantial weight or rely on those allegations to to deny relief. And that is that is where where the agency erred here. I see that I'm out of time. Yes, thank you. You've got some rebuttal. Good morning, your honors. May I please the court. My name is Julia Tyler and I represent the attorney general in this immigration case. Your honors, cancellation of removal is an exercise of grace. It is reserved for the deserving few who can establish and demonstrate and satisfy their burden of proving that they are both statutorily eligible and that they are deserving and merit relief in the exercise of discretion. Is this petition, is this petitioner statutorily eligible? He is statutorily eligible. This was purely the board of immigration appeals relied solely on the discretionary factors and chose not to delve into good moral character in those issues based on the desire and desirability and character as a permanent resident in this country and with demand for cancellation so far outstripping supply in this country. Immigration judges are tasked with providing relief to only the most deserving candidates. In this case, Mr. Umana failed his burden of establishing that he deserved a favorable exercise of discretion and the agency did not err in so finding. So, counselor, may I ask? I just want to confirm something that was a little unclear to me. Is the government asserting that the court doesn't have jurisdiction over just the consideration of criminal complaints? Or is the government also asserting that it doesn't have jurisdiction over the improper fact finding issue? Well, if there had been improper fact finding, that would be a substantial issue of law or colorable issue of law. The government's position is that it is not a substantial issue. That issue of impermissible fact finding simply lacks any merit. OK, right. But you will concede, and I think you just did, which is fine, that there's a distinction between meritorious and colorable. So therefore, in this case, we have we're not assessing whether there's no you're the government is not asking us to take the position that they that we don't have jurisdiction to consider the whether or not there was improper fact finding. I am only saying that if this court considers, in the end, finds that to be a somewhat meritorious argument, then obviously and this court has jurisdiction to do is to establish its jurisdiction. I don't need to tell you that either. So obvious. Yes. So and then I'm hoping that you can spend some of your time on something that I felt like was really nuanced in the argument put forward by Mr. Umana, how they are making an argument on the position of weight. And I am hoping that you can help me figure out how we don't make Aragin a dead letter, which I don't think any of us are inclined to do without being able to do above or below of whether or not substantial weight was on it. Sure. I'd be happy to. Well, I think that there's sort of three buckets. You can think about this case. The first is that petitioner does not contest that the IJ and the board could consider police reports, criminal complaints and those kinds of things. And we know from this court's decision in 2021 in Marquez that Aragin does not create a per se rule against the reliance of police reports. So we know that the agency can decide and look at them. We know that the agency can consider them. The question is, and then we also know really from petitioners 28J in Garcia-Rogel, the court said, we don't know what substantial weight means. But we knew in that case, Garcia-Rogel, that dispositive weight, impermissibly putting all of the eggs in that basket, only looking at the criminal complaint and deciding in the exercise of discretion that somebody didn't deserve cancellation based only on uncorroborated complaints in that case. That clearly is wrong, because as the court in Garcia-Rogel said is, we don't know what substantial weight means. In this case, what I think you're going to say is that we're not in this position because they also considered things like not paying taxes, coming in, etc. We don't really know what the substantial weight means. Exactly, Your Honor. We don't know. Sorry. No, I'm sorry. I just to be as a practical matter, when we're talking about you would acknowledge that very often in these matters that is given significant weight. And we can talk about the fact that there are other factors here that are being listed. But the idea that if the criminal allegations were taken out of the mix, that that was not a substantial part of the BIA's decision, I think we have to make judgments about substantial. I agree that it's not a precise word, but I guess I'm not giving substantial weight in this case. Thank you. Thank you for that question. You know, Petitioner spent some time in the reply brief discussing the fact that that was that the other factors, the immigration judge pointed out support for his children, the fact that he didn't pay 20 years worth of taxes, the fact that he illegally reentered numerous times in flouting the laws of the United States. The fact that he violated his probation and was incarcerated for six and a half months. All of those things, Petitioner in the brief states that the board didn't focus on those things. The reason the board didn't focus on those things was because Umana didn't contravene any of them in the brief to the board. The only thing they wanted to talk about was arrogance. But what the board was saying in part in the decision was you didn't even talk about these other things. And the immigration judge did rely on those things. And respectfully, Judge Lee, if we are to untease the thing that the board addressed the most because it was what Umana addressed the most on in his appeal brief to the board, if we have to untease how big that is in terms of weight versus other things, then we are truly venturing into reviewing the weight being accorded different factors. And that this court does. So how do we interpret arrogance? How do we what does it mean? It has to mean more than or I would say it has to mean more than it can't be that. Oh, this the allegations were the only thing they were dispositive. And that's the only time that it matters. That's the only time we have to be concerned about courts looking for corroboration or explaining it. It has to be substantial. It doesn't have to mean I wouldn't I would offer it doesn't have to mean total. And so what's your view on how we should interpret that? Well, I I don't think this court needs to reach that issue because I think this court this case is so distinguishable from Aragin and so distinguishable from the other cases where they found that the board had contravened Aragin. And I'll just name a few of these dispositive reasons. Judge Jacobs, you mentioned that he was the credibility determination. I understand that counsel wants to distinguish and say that there was no abs no explicit adverse credibility determination. But there was the immigration judge said that he had not been candid, as you mentioned, and found him with except with respect to these criminal allegations that he was otherwise credible. Well, if he's credible as to everything else, then he's clearly not credible. What was the ground of his original removal? Inadmissibility. I mean, the fact that he he was a he was present without inspection or parole. Had he had he been convicted of a crime? He had been. Yes. He said he was on parole. But yes, he was convicted of petty larceny. OK. And and and violation of the terms of violation of the terms of his probation of that for that crime. He never he never engaged in AA. And can the BIA or the IJ give substantial weight to the fact that somebody has reentered illegally twice? Absolutely. Absolutely. And that's exactly what that's exactly why the board mentioned it. The other the other thing, getting back to your question, Judge Lee, was that arrogance is distinguishable because of the corroboration. The fact that it's not the only factor. The corroboration, by by example. Right. But the IJ didn't find corroboration. I mean, you argue in your brief about some of these these issues that might support corroboration of the allegations. But that's that wasn't the IJ didn't cite to that or rely on those factors. Well, no. But I think that as the litigation has progressed and arrogant has become more of a focus, it's important to distinguish between. Right. But to the extent that I mean, this leads into the actually the other thing I was going to ask you about fact finding. Yes. Oh, yes. To the extent that you're sort of asking about these things that were not what came from the IJ, like the the potential corroboration. The BIA is not supposed to be doing fact finding, correct? And. Correct. According to their own rules. Well, the board isn't supposed to be doing fact finding. The immigration judge, of course, can do that's what I mean. Yeah. And so. And so, for example, Judge Lee, the immigration judge specifically mentioned that they found that his that his testimony with regard to the acts that were that were discussed in the in the criminal documents were contravened by facts contained in the criminal documents. So one example would be the three hundred and thirty three dollars of restitution or, you know, those kinds of things. What do we make of I'm sorry to keep interrupting. What do we make, though, of the IJs? I don't even know the framing of this as, you know, being very particular to put in that these alleged this, alleged that, alleged that. Well, I thought, what do we make of the fact that I understand your position? Well, if there's a if the ultimate statement is, oh, well, this is a pattern. The IJ is concluding that. But the IJ is not doing that in a very I don't think it's accidental. And it wasn't that the word alleged was thrown in there once. The IJ keeps saying that. I appreciate that, Judge Lee. And I'll also point out that the board used the word allegations three or four times as well. With regards to these these these offenses with that, they said he did this. He committed. Well, actually, if you look, if you're scanning the board decision, as I have about a few thousand times, there's nothing in there where the board says that he committed that. And he doesn't say committed, but they said he chased her with a pole. There's no alleged when they're. It's interesting, Judge Lee. I might be wrong. Point me to the page. So the board states that the record reflects that in 2004, the respondent was arrested for robbery based on an incident where and then he's going straight to the document, where the board is going straight to the document. And he and another person entered a business and stole two cans of beer. And the respondent punched him, resulting in a contusion and laceration to the cashier's mouth that required medical attention. So he's just citing the record, the what the evidence in the record reflects. That's actually what the criminal complaint says. Similarly, the immigration judge said at A.R. 68, according to the charging document, Umana struck his girlfriend in the face with a closed fist and pushed her to the ground. So they're both talking about what the record reflects happened. And Judge Perez, you're exactly right. He is fine. The immigration judge found that his arrests showed a pattern of anger and violence. And he was and the immigration judge was concerned due to the specificity of the allegations in the charging documents and the pattern that the court sees. That is the fact finding. And there is simply no daylight or very, very little daylight between these two decisions. And I think when you discuss what the board said, the immigration judge, the board agreed with the immigration judge that Umana's positive factors were outweighed by negative factors, including including Umana's criminal record, which contained evidence of criminal behavior. So, again, I feel like and I would just I would guess I would end with this because I realize I'm over. A reviewing court must uphold even a decision of less than ideal clarity if the path of the agency can reasonably be discerned. So to the extent that the immigration judge is using the word allegations more or less than the board or those kinds of things. Again, I think that that's maybe that's just a decision of less than ideal clarity. I think and not to be, you know, to give you a hard time about this, but I understand what you're saying. But in some ways, what I'm hearing is that, well, it's technically it's not right. It's procedures. But in this context, you know, these applicants are held to very stringent rules. Absolutely, Your Honor. You know, stringent procedures. And so those same sort of requirements, I think, should apply to the agency as well. Judge Lee, I agree. And I just don't think that the daylight exists between these two decisions as petitioner maintains. I just simply don't. I just I don't I think they are really in lockstep. I do. Thank you so much for your time. I appreciate it. Thank you. Ms. Lynn, you have three minutes. Ms. Lynn, can you help us with something that we seem to all be grappling with, which is what is substantial weight? Like when is when is some too much? And I'm very glad to hear that the government is not challenging jurisdiction on this issue and that they do believe that, again, is good law. So when when does it become too much? So I I want to answer that. And I want to explain why we think it's clear from the face of the decisions here that the agency placed substantial weight on the allegations and the criminal complaints. But I also want to note that the court doesn't have to go quite that far. There's no indication that the agency applied our again at all. And the agency could excuse me. The court could remand for the agency to apply our again without ultimately deciding that there was substantial weight placed on the allegations in the criminal complaints here. And but I want to talk about why we know that in this case, there was substantial weight that was placed on the allegations and the criminal complaints. So first, Mr. Omana argued to the BIA that the IJ had erred by placing substantial weight on the allegations in the criminal complaints. And I point that out just to note that the BIA does not expressly clarify or make clear that it is only placing limited weight on the allegations in the criminal complaints. And for instance, that's what the agency did in the Harama case from the Third Circuit. The agency there noted that there were that the criminal history was an adverse factor, noted that that that criminal history had arrests that did not result in convictions, but said that even aside from those arrests, the criminal history was a substantial factor because of the convictions in the record. And we simply don't have anything like that here. And then we do have a conviction. That's why he was removed in the first place. We have a conviction and then we have violation of a parole. And and and the and the conviction was for an offense that involved violence. Uh, it's correct that there is a conviction in the record. The conviction is not for an offense that involved violence. It's for petty larceny, which is just taking someone's property. It does not involve violence. That's correct. But then beating them while you're doing it is is seems like an additional consideration. Well, those the the those are the allegations of violence in the criminal complaints that never resulted in a conviction and for which the agency never found there to be corroborating evidence. And it's those allegations, the allegations of violence upon which the immigration judge placed substantial weight. And we know that because the immigration judge could not place substantial weight upon the facts. That supported a conviction for petty larceny, even though those facts involved violence. The the immigration judge placed substantial weight on allegations of violence, and those allegations of violence were in a criminal complaint. And those allegations of violence did not result in a conviction. It's it's sort of always it's always an a a improper for an immigration judge to place extraordinary and unjustifiable weight on things that are that are not significant. Or that. But but but they regularly put great weight on on on letters from family members, from letters from clergy, from documents from other countries that may or may not be suspect. I mean, not everything it shows that appears, fortunately, before an IJ is is is sworn or attested to. And and it sounds to me like this this doctrine really is is is a corollary of the general principle that it's a mistake to put excessive weight on one thing, particularly when there's significant evidence going in the other direction. Well, criminal complaints are unique from the documents that you just listed, because the BIA has a specific standard that it has issued in a precedential decision where it has said in no uncertain terms that the agency cannot place substantial weight on criminal complaints absent a conviction or corroborating evidence. And if the BIA wants to change that standard for the reasons you articulate or explain why in a particular case, it thinks that notwithstanding that precedential decision, it can, in fact, place substantial weight on allegations in the criminal complaints. It can do so in a reasoned decision in a precedential decision. It simply has not done that here. Thank you. If there are no further questions, we would ask that the court vacate the decision and remand to the agency. All right. Thank you. Thank you to both counsel.